1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   BETTY JEAN KNOX,                    )    No.  CV 04-3100-PJW
                                         )
11                  Plaintiff,           )
                                         )
12             v.                        )    MEMORANDUM OPINION AND ORDER
                                         )
13   JO ANNE B. BARNHART,                )
     COMMISSIONER OF THE SOCIAL          )
14   SECURITY ADMINISTRATION,            )
                                         )
15                  Defendant.           )
     _____)

16

17                                   I.

18                              INTRODUCTION

19        After Defendant Social Security Administration (the "Agency")

20   denied her application for supplemental security income ("SSI") and

21   disability insurance benefits ("DIB"), Plaintiff appealed the Agency's

22   decision to this Court.  She raises a host of reasons why the Agency's

23   decision denying her application for benefits was wrong.  For the

24   reasons set forth below, the Agency's decision is affirmed and the

25   case is dismissed with prejudice.

26

27

28

II.

SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff was born in 1958 and was 45 years old at the time of the administrative hearing in this case in October 2003.  She has held various jobs over the last 20 years, generally having to do with medical care.  (AR 84.)  Her last position was as an emergency room clerk.  It ended in April 2002, after just two weeks, when she became upset with a co-worker and "went off."  (AR 413-14.)  Before that, she had held a series of medical clerk jobs for periods ranging from several months to several years.  (AR 84.)

In January 2002, she was diagnosed as HIV positive.  Plaintiff has been treated for her condition since then.  Though she complained at the hearing of complications from HIV, the medical records established that, in general, Plaintiff tolerated the antivetroviral medicine well when she took it and that her condition was, essentially, in check.  (AR 262.)  In fact, it appears that, at the time of the hearing in October 2003, Plaintiff's condition remained stable without the use of HIV medication.  (AR 262.)

In September 2002, Plaintiff filed the instant application for DIB and SSI, alleging that she was disabled as of April 2002, due to depression, HIV, and symptoms related to HIV.  (AR 59.)  The Agency denied her claim initially and on reconsideration.  She then requested and was granted a hearing before an Administrative Law Judge ("ALJ").  On October 28, 2003, she appeared with counsel and testified at the hearing.  (AR 406.-48.)

On January 14, 2004, the ALJ issued a decision denying her claim for benefits.  (AR 13-19.)  Following the Agency's five-step sequential evaluation process, the ALJ determined at step one that

2

1  Plaintiff was not working.  (AR 18.)  At step two, he determined that
2  Plaintiff was HIV positive, had herpes, peripheral neuropathy,
3  dermatitis, and a mood disorder.  (AR 16.)  The ALJ concluded that
4  these conditions in combination constituted a severe impairment,
5  though he concluded at step three that none of them alone or in
6  combination met or equaled a listed impairment.  (AR 16.)  At step
7  four, the ALJ determined that Plaintiff was capable of performing her
8  prior work as a radiology file clerk and, therefore, was not disabled.
9  (AR 16, 18.)  Plaintiff appealed to the Appeals Council, which
10 affirmed the ALJ's decision.  (AR 5-7, 9.)  She then filed the instant
11 action in this Court seeking to overturn the Agency's decision denying
12 her benefits.

13                                  III.

14                               DISCUSSION

15       In this appeal, Plaintiff alleges that the ALJ erred because:

16       1.    His decision was not based on substantial evidence.

17       2.    He failed to address the elements of the listings when he

18             concluded that Plaintiff did not meet any of the listings.

19       3.    He failed to detail the physical and mental demands of

20             Plaintiff's former work, yet concluded that Plaintiff was

21             capable of performing that work.

22 (Plaintiff's Brief at 4-15.)

23       For the reasons set forth below, the Court concludes that the
24 ALJ's decision was supported by substantial evidence and was not based
25 on legal error.  The decision is, therefore, affirmed.

26 A.   Standard of Review

27       "Disability" under the applicable statute is defined as the
28 inability to perform any substantial gainful activity because of "any

                                    3

1  medically determinable physical or mental impairment which can be

2  expected to result in death or which has lasted or can be expected to

3  last for a continuous period of not less than twelve months."   42

4  U.S.C. § 1382c(a)(3)(A).   The Court may overturn the ALJ's decision

5  that a claimant is not disabled only if the decision is not supported

6  by substantial evidence or is based on legal error.  *See Magallanes v.*

7  *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

8      Substantial evidence "'means such relevant evidence as a

9  reasonable mind might accept as adequate to support a conclusion.'"

10  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison*

11  *Co. v. NLRB*, 305 U.S. 197, 229 (1938).)   It is "more than a mere

12  scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d

13  599, 601 (9th Cir. 1998), and "does not mean a large or considerable

14  amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

15      "The Court must uphold the ALJ's conclusion even if the evidence

16  in the record is susceptible to more than one rational

17  interpretation."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

18  599 (9th Cir. 1999).   Indeed, if the record evidence can reasonably

19  support either affirming or reversing the Agency's decision, this

20  Court must not substitute its judgment for that of the ALJ.  *See*

21  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).   If the ALJ

22  committed error but the error was harmless, reversal is not required.

23  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th

24  Cir. 2004)(applying the harmless error standard).

25

26

27

28

B.   <u>The ALJ's Decision Was Based On Substantial Evidence</u>

Under the heading that the ALJ's decision was not supported by substantial evidence, Plaintiff raises five claims.  She argues that each mandates reversal of the ALJ's decision.  For the reasons set forth below, these arguments are rejected.

    1.   <u>The ALJ's Conclusion At Step Two That Plaintiff's Mental Condition Was "Severe" Was Not Inconsistent With His Finding At Step Three That It Was A "Mild" Mood Disorder</u>

At step two of the analysis, the ALJ concluded that Plaintiff's mental disorder was "severe."  At step three, however, he characterized it as a "mild" mood disorder.  Plaintiff argues that these findings are mutually inconsistent and necessitate remand.  The Court disagrees.  As set forth below, the step-two analysis is a perfunctory screening test to separate frivolous claims from legitimate ones.  A step-two finding that an impairment is severe does not bind the ALJ to conclude at a later step that the same impairment is disabling.

Under 20 C.F.R. § 416.921, a "non-severe impairment" is one that does not significantly limit a person's physical or mental capacity to perform basic work-related functions.  The determination that an impairment is "non-severe" is "'a de minimis screening device [used] to dispose of groundless claims.'"  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001)(quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).  Such a finding is only appropriate when the "medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work . . . . "  SSR 85-28; *see also Bowen v. Yuckert*, 482 U.S. 137, 154 (1987).

1   A finding at step two that an impairment is severe is not

2   controlling at steps three, four, and five.  The two analyses are

3   unrelated.  Were this not the case, most everyone with a step-two

4   "severe" impairment would be disabled.  Having reviewed the medical

5   record in light of the ALJ's decision, the Court agrees with the ALJ's

6   assessment at step two that Plaintiff's condition involved more than a

7   slight abnormality and would have had more than a minimal effect on

8   Plaintiff's ability to work but, on further analysis, did not prevent

9   her from working.  For these reasons, Plaintiff's argument here is

10  rejected.

11        2.   The Objective Medical Evidence Supported The ALJ's

12             Conclusions

13   Plaintiff argues that the ALJ relied too heavily on the objective

14  medical evidence to conclude that Plaintiff had not proved that her

15  condition was debilitating.  She maintains that the ALJ should have

16  placed more importance on Plaintiff's subjective claims.  For the

17  reasons set forth below, the Court disagrees.

18   In September 2003, laboratory tests showed that Plaintiff's CD4

19  count was 1133.[1]  (AR 338.)  The lab results indicated that the

20  reference or "normal" range of CD4 scores was 359 to 1519.  (AR 338.)

21  Thus, Plaintiff's score was well within the normal range.

22

23

24

25

---

26       [1]  CD4 cells are white blood cells that are attacked by the HIV
     virus.  A CD4 count persistently below 350 indicates a slightly
27   weakened immune system; a CD4 count below 200-250 indicates risk for
     serious infections.  *See* AIDSmap, at http://www.aidsmap.com (June 14,
28   2005.)

1    Tests also showed that Plaintiff's Viral Load was continually
2    dropping.[2] Her count was 53,648 in March 2002, (AR 238), and had
3    dropped to 1,393 by May 2003 (AR 349).  The cut-off line for a "low"
4    viral load is 10,000.  *See* AIDSmap, at http://www.aidsmap.com (June
5    14, 2005.)  Plaintiff's weight had increased over the same period from
6    170 to 183 pounds.

7    Though these measures suggested Plaintiff's HIV was in check,
8    Plaintiff claimed at the hearing that she did not feel well.  She
9    argues that the ALJ should not have relied on the objective indicators
10   of her health to dismiss Plaintiff's subjective complaints that she
11   was not feeling well.  The Court disagrees.

12   "While subjective pain testimony cannot be rejected on the sole
13   ground that it is not fully corroborated by objective medical
14   evidence, the medical evidence is still a relevant factor in
15   determining the severity of the claimant's pain and its disabling
16   effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)
17   (citation omitted).  The ALJ properly relied on the objective
18   indicators that suggested Plaintiff's symptoms were mild as one
19   indication that Plaintiff could work.  Her testimony that HIV caused
20   pain and other, more serious side effects was properly rejected by the
21   ALJ for specific and legitimate reasons, as set forth below, and his
22   finding on this issue will not be overturned.

23       3.   The ALJ Did Not Act As His Own Medical Expert

24   Plaintiff complains that the ALJ acted as a medical expert in
25   rejecting her subjective complaints.  She argues that the ALJ was

26
27   ─────────────
28       [2]  Viral load indicates the amount of HIV virus in the
     bloodstream.  *See* AIDSmap, at http://www.aidsmap.com (June 14, 2005.)

required to call a medical expert to assess whether her "described symptoms . . . and functional capacity, were consistent, despite improved CD4 and Viral Load." (Plaintiff's Brief at 7.) Plaintiff is wrong. The ALJ is tasked with resolving conflicting medical evidence. *See Magallenes*, 881 F.2d at 751 (holding that the ALJ is responsible for resolving conflicts and ambiguities in the medical testimony). The ALJ was presented with numerous medical records and opinions in this case from various doctors and was not required to call another doctor to sort them out. The ALJ properly evaluated the medical evidence, relying more heavily on some of it and less heavily on other parts of it. That was his function. Plaintiff's unsupported argument that the ALJ needed another expert to analyze the evidence is rejected.

    4.   <u>The ALJ's Finding That Plaintiff Was Not Credible Is</u>
          <u>Supported By The Evidence</u>

    The ALJ found that Plaintiff was not credible and rejected her testimony. Plaintiff complains that this was error. She also argues that the ALJ was wrong for simply summarily concluding that Plaintiff was not a credible witness, as opposed to a more detailed finding. (Plaintiff's Motion at 9.) Again, the Court disagrees.

    "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). An ALJ may reject a claimant's testimony, but must identify the incredible testimony and specify the evidence that undermines that testimony. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In analyzing testimony, the ALJ may employ ordinary techniques of credibility evaluation. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). These include "the claimant's daily activities, inconsistencies in

1 testimony, [and the] effectiveness [. . . .] of any pain medication."
2 *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  As long as
3 substantial evidence in the record supports the ALJ's credibility
4 finding, this Court may not second-guess it.  *See Morgan*, 169 F.3d at
5 600.

6      In this case, the ALJ found that Plaintiff had impairments which
7 could produce some symptoms of pain.  (AR 17.)  As a result, the ALJ
8 could not reject Plaintiff's subjective complaints merely because
9 there was a lack of medical evidence to fully corroborate her claims
10 of pain.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).
11 Further, because the ALJ made no finding of malingering, he was
12 obligated to state "clear and convincing" reasons for rejecting
13 Plaintiff's pain testimony.  *Id.*

14      The ALJ found that Plaintiff's testimony was not credible
15 because: 1) her reported symptoms were unsupported by the medical
16 records or the laboratory tests, 2) her claims at the hearing were
17 inconsistent with the claims she made to her case worker, and differed
18 from her statements to her doctors, and 3) her daily activities were
19 inconsistent with her claimed limitations.  (AR 17.)

20      The Court finds that the reasons offered by the ALJ are both
21 legitimate and supported by the record in this case.  *See e.g. Orteza*,
22 50 F.3d at 750.  Though the ALJ is not at liberty to reject a
23 claimant's pain testimony based solely on the fact that the objective
24 medical evidence does not fully corroborate it, the ALJ may still
25 consider that evidence in assessing a claimant's credibility.
26 *Rollins*, 261 F.3d at 857.  The objective medical evidence demonstrated
27 that, at the time of the hearing, Plaintiff's HIV was benign.  Her CD4
28 count was up and her Viral Load was down.  She had gained 13 pounds in

1    the preceding 12 months.  Her statements to her doctors--that she felt

2    fine and was doing well--were consistent with the objective medical

3    evidence.

4         The doctors, for their part, agreed with Plaintiff's own

5    assessment.  Plaintiff's treating physician, Dr. Babaie, opined in

6    September 2003 that Plaintiff was "[c]urrently doing quite well."  (AR

7    328.)  Dr. Patel, an examining physician, determined that Plaintiff

8    had no physical or functional limitations.  (AR 262.)  Dr. Grossman,

9    the reviewing doctor, concurred.  (AR 269-76.)

10        As to Plaintiff's daily activities, she was able to cook, clean,

11   shop, and attend therapy sessions three days a week.  She also was in

12   school studying to be a medical biller.  (AR 331.)  These activities

13   seemed inconsistent with Plaintiff's claimed incapacity at the

14   administrative hearing.[3]

15        Further, the Court notes that Plaintiff testified at the

16   administrative hearing for about 40 minutes.  (AR 408-48.)  Thus, the

17   ALJ had an adequate opportunity to assess Plaintiff's demeanor during

18   the hearing.  The Court has reviewed the transcript from the hearing,

19   as well as the statements Plaintiff made throughout this process--in

20   her application for benefits, to her case worker, and to her doctors--

21   and concurs with the ALJ that the statements conflict with her

22

23   _____

24        [3]  Plaintiff objects to the fact that the ALJ's credibility
     finding was based in part on his observation that Plaintiff managed to
25   take the bus to her weekly medical appointments.  She argues that the
     ALJ improperly used her effort to comply with treatment against her.
26   That does not appear to be the case.  The ALJ properly considered the
     fact that Plaintiff was physically and mentally capable of using
27   public transportation to get around.  There was nothing improper about
     him making this observation or considering it in his evaluation of
28   Plaintiff's case.

                                      10

testimony at the hearing.  For example, she stated in a report to the Agency in December 2002 that she left her house five to six days a week.  (AR 74.)  Her testimony at the hearing in October 2003 was that she had only three good days a week in which she could leave the house.  (AR 426.)  The medical evidence established that during this same time period the objective indicators for Plaintiff's condition showed that her condition had greatly improved over the same period, *i.e.,* her CD4 count had gone up and her Viral Load had gone down.  The Court also notes that in September 2003--one month before she testified at the hearing as to how poorly she was doing--Plaintiff reported to her treating doctor that she was doing well.  (AR 328.)

Plaintiff told the ALJ that she had stopped using crack cocaine in 2000.  (AR 410.)  Only when he confronted her with the fact that the record indicated that she had taken cocaine after 2000 did she admit that, in fact, she had "relapsed" in January 2002 and used it for one month at that time.  (AR 411.)  Plaintiff told her doctor in September 2003--one month before the hearing--that she had used crack cocaine as late as September 2002.  (AR 330-31.)

Plaintiff provided other questionable testimony at the hearing. For example, in attempting to undermine a consulting examiner's opinion that she was not disabled, Plaintiff testified at the hearing that that doctor had merely talked to her at her exam and, essentially, had failed to examine her.  (AR 441.)  The ALJ noted, however, that the same doctor noted a healed scar on Plaintiff's abdomen, which, presumably, would only have been visible if Plaintiff had been examined by the doctor.  In addition the doctor's chart notes

1   described enlarged lymph nodes, additional evidence that he had, in
2   fact, physically examined Plaintiff.[4]  (AR 261-441.)  This clearly
3   impacted on Plaintiff's credibility.

4         In the end, the record does not support Plaintiff's claim that
5   the ALJ merely summarily concluded that she was not credible.  The ALJ
6   devoted two paragraphs solely to the issue of credibility, (see AR
7   17), and noted throughout his decision various relevant factors
8   relating to Plaintiff's credibility that were considered in his
9   analysis.  The Court concludes that the ALJ's finding that Plaintiff
10  was not credible was based on specific and legitimate reasons that are
11  supported by substantial evidence in the record and will not be
12  disturbed.

13        5.   The ALJ Properly Analyzed The Medical Evidence

14        Plaintiff complains that the ALJ wrongly relied on the examining
15  and consulting doctors' opinions instead of on the treating
16  physicians' opinions.  The record does not bear this out.

17        As to her physical complaints, Plaintiff was examined by Ismail
18  Patel, M.D., in conjunction with this case.  He found that Plaintiff
19  had no physical or functional limitations.  (AR 262.)  Dr. Kathleen
20  Squires treated Plaintiff in 2002 at Los Angeles County and University
21  of Southern California Medical Center.  (AR 218-47.)  The record
22  contains Dr. Squires's treatment notes but contains no opinion from
23  Dr. Squires as to any limitations on Plaintiff due to HIV.  (AR 218-
24  47.)

25

26  _____

27        [4]   The extent of the doctor's thoroughness was at issue because
    the doctor concluded that Plaintiff was not disabled and Plaintiff was
28  attempting to discredit that opinion in both her brief to the ALJ and
    in her testimony at the hearing.

                                    12

1    There are also a series of chart notes from other treating
2  doctors, which evidence ongoing treatment for Plaintiff.  (AR 340-60.)
3  They do not suggest that Plaintiff's condition renders her disabled.
4  In fact, for the most part, the records chronicle that Plaintiff is
5  relatively healthy and appears to respond well to HIV medication.  For
6  example, on March 7, 2003, it was noted: "[Patient] states 'she feels
7  good on new [medicine] regimen.'  [Patient] doing well."  (AR 357.)
8  In October 2003, her doctor opined that Plaintiff was "[c]urrently
9  doing quite well."  (AR 328.)  Nothing in these records suggests
10 Plaintiff is disabled.  In addition, Dr. Samuel N. Grossman reviewed
11 Plaintiff's records and filled out a residual functional capacity
12 assessment form in which he concluded that Plaintiff's condition did
13 not preclude her from working.  (AR 269-76.)  Thus, from the physical
14 side, there does not appear to be any medical opinions suggesting
15 Plaintiff's condition precludes her from working.

16    On the mental/psychiatric side, there is a consulting examiner's
17 report from psychiatrist Ahmad.  (AR 264-68.)  He concluded, in sum,
18 that Plaintiff suffered from a mood disorder that did not preclude her
19 from working.  (AR 267.)  Dr. Dudley reviewed the records and
20 concluded that Plaintiff was capable of performing a full range of
21 simple, repetitive tasks.  (AR 291-93.)

22    Also included in the record is an "Initial Assessment" form from
23 the Los Angeles County Department of Mental Health from July 2002.
24 (AR 301-06.)  The form was completed by a social worker.  (AR 306.)
25 According to the social worker, in July 2002, Plaintiff suffered from
26
27
28

13

bi-polar disorder and had a GAF of 38.[5]   (AR 306.)   Fourteen months

later, in September 2003, it was also signed by an unidentified doctor

or psychologist.  (AR 306.)  The line containing that signature notes

that "Medicare requires signature by M.D. or licensed Ph.D."  (AR

306.)

        The ALJ rejected this assessment on the ground that it was not

performed by a physician and no further follow-up records were

produced, and concluded that Plaintiff suffered from only a mild mood

disorder.  (AR 16.)  Plaintiff objects.  She contends that the ALJ

should have relied on the social worker's conclusion that she suffered

from bi-polar disorder and had a GAF of 38 and not the other doctors'

reports.  There is no support for this argument.

        A social worker is not a physician or psychologist and his or her

opinion is not entitled to treating physician status.  *See*, *e.g.*, 20

C.F.R. §§ 416.913(a)(1) and (3); *Gomez v. Chater*, 74 F.3d 967, 971

(9th Cir. 1996).  The fact that 14 months after the social worker

signed the intake report it was endorsed by a doctor does not change

this analysis; the report was clearly the work of the social worker.

Though there could be a situation where a psychiatrist working closely

with a therapist, like a social worker, could adopt the social

---

        [5]   The GAF score reflects the clinician's judgment of the overall
functioning of the patient.  GAF scores range from a high of 100
(superior functioning) to 1 (persistent danger of severely hurting
self or others, or persistent inability to maintain hygiene, or
serious suicidal act with clear expectation of death).  *See American
Psychiatric Association, Diagnostic & Statistical Manual of Mental
Disorders*, 32 (4th ed. 1994).  A GAF of 31-40 indicates "some
impairment in reality testing and communication (e.g., speech is at
times illogical, obscure, or irrelevant) OR major impairment in
several areas, such as work or school, family relations, judgment,
thinking, or mood. . . ."  *Id.*

worker's opinions as the doctor's own and, thus, in essence, elevate the social worker's opinion to a treating source opinion, that would not be appropriate here. *See*, 20 C.F.R. § 416.913(a)(6); and *Gomez*, 74 F.3d at 971. There is no evidence that the social worker and the treating source were working closely together. They signed the report 14 months apart. Further, the social worker's opinion was drastically different than the other doctors. Not only did the other psychiatrists *not* conclude that Plaintiff was suffering from bi-polar disease and, effectively, unable to cope, none of Plaintiff's regular doctors ever noted that Plaintiff was having any trouble with reality testing. In fact, they regularly noted the opposite. For example, Plaintiff's treating physician, who also saw Plaintiff in July 2002, one week before the social worker diagnosed her with bi-polar disorder and assessed her GAF at 38, noted, Plaintiff "[complained] of pain [in] knee, *otherwise feeling well*." (AR 375 (emphasis added).) None of Plaintiff's other doctors mentioned any severe mental or emotional problems, either. Surely, over the course of Plaintiff's treatment, Plaintiff's treating doctors would have noted something if Plaintiff was so severely incapacitated. Instead, when the doctors did comment on Plaintiff's well-being, they noted that she was doing well.

In sum, the treating doctors and the consulting doctors all concluded that Plaintiff was managing well. None of them concluded she was disabled. The ALJ's finding that Plaintiff was not disabled was consistent with these opinions. Though the social worker concluded that Plaintiff's condition was much more severe, that opinion was not entitled to any deference and was properly rejected for reasons germane to the evidence. *See Dodrill v. Shalala,* 12 F.3d

15

1    915, 919 (9th Cir. 1993) (holding that ALJ can reject testimony of

2    non-treating sources for reasons germane to the testimony).

3    Plaintiff's claim is rejected.

4    C.    <u>The ALJ Did Not Err Regarding The Listings</u>

5          Plaintiff complains that the ALJ did not go through each of the

6    listings contained in the regulations (*see* 20 C.F.R. §§ 404, Appendix

7    1 to Subpart P), and, after setting out the requirements for each

8    listing, explain why Plaintiff did not meet each listing.  This claim

9    is frivolous.

10         The ALJ is not required to explain in his decision why a claimant

11   does not meet each listing.  Rather, it is the claimant's burden to

12   establish that she *does* meet a listing.  *See Bowen v. Yuckert*, 482

13   U.S. 137, 146 n. 5 (1987).  Plaintiff failed to do so here.  Not only

14   did she not prove she met a listing, she failed to even allege that

15   she had any symptoms relating to most of them.  She continues this

16   practice in this appeal and fails to suggest to the Court in her brief

17   what listing she is talking about and why she meets it.  The Court has

18   uncovered an argument in her brief before the ALJ that, at least at

19   that stage, she was referring to listing 14.08N, relating to HIV and

20   AIDS.  (AR 107-08.)  Even a cursory review of the requirements for

21   listing 14.08N, however, makes clear that Plaintiff does not meet

22   these requirements.  First, Plaintiff would have had to establish

23   marked limitations in functioning.  See § 14.00D.  Not even Plaintiff

24   testified to this.  Even if she had, the ALJ's rejection of her

25   testimony meant that there would have been no credible evidence that

26   she had anything other than mild limitations.  The objective medical

27   evidence indicated that she did not have marked limitations in any

28   event.  The other elements were also not established with medical

                                    16

evidence and so there is essentially no evidence that Plaintiff met
the listing.  Where, as here, there is little or no evidence of a
listing, the ALJ is not required to discuss the non-existence of the
evidence.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir.
1990).  For these reasons, Plaintiff's claim here is denied.

D.   <u>The ALJ Correctly Concluded That Plaintiff Could Do Her Former
     Work</u>

     Plaintiff complains that the ALJ failed to address the physical
and mental requirements of her past work and assess whether she could
perform it despite her condition.  This argument is rejected.

     The record supports the ALJ's conclusion that Plaintiff
physically could perform her past work as a records clerk.  She
testified as to what her job entailed during the administrative
hearing.  (AR 414-20.)  Dr. Patel's opinion supports the ALJ's finding
that Plaintiff could still perform the physical demands of the job.
So, too, does Dr. Grossman's.  Both of these opinions are noted in the
ALJ's decision.  Further, there was no medical evidence to contradict
either opinion.

     Mentally and psychologically, Plaintiff has the ability to
perform these jobs as well, as found by Dr. Ahmad and Dr. Dudley,
whose opinions the ALJ discussed.  The only evidence that contradicted
this was Plaintiff's testimony, which was properly rejected.  Thus,
there was no credible evidence presented that Plaintiff--who could
perform all the demands of a records clerk in April 2002--could no
longer perform the job.  The evidence that was submitted established
that she could.  As such, Plaintiff's claim here fails also.

1

IV.

2

CONCLUSION

3      For the reasons set forth above, Defendant's summary judgment

4 motion is GRANTED and Plaintiff's is DENIED.  The case is dismissed

5 with prejudice.

6

7      DATED:    September  29  , 2005.

8

9                              ___/s/_____

10                             PATRICK J. WALSH
                               UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  S:\PJW\Cases-Soc Sec\KNOX, B 3100\Memo_Opinion.wpd